*IN THE UNITED STATES BANKRUPTCY COURT*
*FOR THE EASTERN DISTRICT OF PENNSYLVANIA*

| | | |
|---|---|---|
| IN RE: GREG EDWARD DONOVAN | : | CHAPTER 7 |
| Debtor | : | No. 21-13406-mdc |
| | : | |
| CENTRIC BANK | : | |
| Plaintiff, | : | ADVERSARY ACTION |
| v. | : | |
| | : | NO. _____ |
| GREG EDWARD DONOVAN | : | |
| Defendant. | : | |

## COMPLAINT OBJECTING TO DISCHARGE PURSUANT TO 11 U.S.C. §§ 727 (a)(4)

Centric Bank, by and through its attorneys, Berger Law Group, P.C., hereby files this Complaint Objecting to Discharge Pursuant to 11 U.S.C. §§ 727 (a)(4), and avers as follows:

1. Plaintiff/Creditor Centric Bank is a Pennsylvania chartered bank with a place of business at 4320 Linglestown Road, Harrisburg, Pennsylvania.

2. Debtor/Defendant Greg Edward Donovan ("Debtor" or "Defendant" or "Mr. Donovan") is the debtor in this bankruptcy case and is an adult with a last known residence at 4540 Silver Lining Street, Sarasota, Florida.

3. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

4. This is a core proceeding in Debtor's bankruptcy case pursuant to 28 U.S.C. § 157 (b)(2)(1) and 157(b)(2)(J).

5. This matter constitutes an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

**FACTS**

6. On December 29, 2021, the Debtor filed a voluntary petition with this Court under Chapter 7 of the Bankruptcy Code.

7. By way of background, this matter relates to two loans (the "Loans") made by Centric Bank to West Ninth Vintage, Inc. ("West Ninth"), which Loans were guaranteed by Mr. Donovan and by his wife Inna Donovan ("Mrs. Donovan").

8. The first loan was made pursuant to a U.S. Small Business Administration ("SBA") note dated May 30, 2017 (Note 1") in the amount of $3,005,000 ("Loan 1").

9. The second loan was made pursuant to the terms and conditions of that certain Line of Credit Note also dated May 30, 2017 ("Note 2") in the principal amount of $100,000.00 ("Loan 2").

10. Both Loans were unconditionally guaranteed by the Debtor and by Mrs. Donovan.

11. The borrower, West Ninth, defaulted on its obligations to Centric Bank under the Notes by virtue of various events, including, without limitation, its failures to make payment when due of the amounts payable on the Notes.

12. Additionally, pursuant to the express terms of the loan documents, the filing for Bankruptcy by any guarantor of the Loans is an event of default.

13. Therefore, Centric Bank is a party in interest under 11 U.S.C.S. §

362(d).

14. It appears that the Debtor made multiple misrepresentations to the Court in Debtor's Schedules.

15. Centric Bank has discovered that on December 21, 2021, only eight (8) days prior to this bankruptcy filing, that Mrs. Donovan purchased a property in Florida located at 4540 Silver Lining Street, Sarasota, Florida (the "Florida Property").

16. Mrs. Donovan purchased the Florida Property for $389,900 and financed the purchase through a mortgage from Lending Capital Group in the original principal amount of $333,000. (the "Mortgage").

17. Interestingly, despite the fact that Mr. Donovan was not on the deed to the Florida Property, the Debtor is a co-borrower on the Mortgage.

18. The Florida Property is not listed as an asset nor as a liability on the Debtor's bankruptcy schedules.

19. Based on this strange development, and due to the lack of the Florida Property and/or the associated debt appearing on the Debtor's schedules, a meeting of creditors/2004 examination of the Debtor was conducted by the trustee on April 1, 2022 (the "Examination"), so that this issue (and others) could be examined.

20. During the Examination, the Debtor testified that Mrs. Donovan immediately moved into this Florida Property, and that Mrs. Donovan now works from the Florida Property.

21. The Debtor also stated that the Florida Property is now his only

residence, despite the fact that Debtor claimed that he and Mrs. Donovan have separated.

22. Thus, even though Debtor claims to be separated, the Donovans both moved from Pennsylvania to Florida, at approximately the same time, and they both continue to live together in the Florida Property.

23. Further, during the Examination, Debtor testified that Mrs. Donovan purchased the Florida Property with "her own" money.

24. Additionally, Debtor testified that prior to the move to the Florida Property, that Debtor was the one paying all of the household expenses in Pennsylvania, and that Mrs. Donovan did not contribute to any of the household expenses (despite the fact that only Mrs. Donovan was employed during this time).

25. However, following the move to Florida, Debtor claims that he does not pay rent or any other sums to Mrs. Donovan to live at the Florida Property.

26. Debtor testified that he does not pay any household expenses for the Florida Property, other than for his own food and gas.

27. Thus, the roles between the Debtor and Mrs. Donovan appear to have been reversed since their move to Florida.

28. This strange sequence of events and the fact that neither the Florida Property nor Mrs. Donovan are listed on the Debtor's schedules is troubling.

29. Additionally, during the Examination, Debtor testified that he is now employed in a full-time position in which he is being paid approximately $100,000 per year, but that he continues to pay no household expenses.

30. Notwithstanding Debtor's testimony, Debtor's schedules continue to claim that Debtor has no income and that he maintains substantial household expenses.

31. These claims by the Debtor, which may have been accurate at the moment the bankruptcy petition was filed, are clearly not accurate at this juncture.

32. There are significant questions as to whether the Debtor's schedules are false and misleading, whether the Debtor still meets the means test for a Chapter 7 bankruptcy, and whether Mrs. Donovan should have been included as a co-debtor on the Debtor's filed schedules.

33. These questions cast doubt on the truthfulness of the Debtor and may indicate that the Debtor has engaged in a scheme to defraud his creditors by inappropriately seeking Chapter 7 bankruptcy protection.

34. Therefore, Creditor Centric Bank seeks the denial of the Debtor's discharge.

## COUNT I
## OBJECTION TO DISCHARGE PURSUANT TO 11 U.S.C. 727(a)(4)

35. Plaintiff Centric Bank incorporates the foregoing paragraphs as if set forth at length herein.

36. Pursuant to 11 U.S.C. 727(a)(4), the court shall grant the debtor a discharge in bankruptcy unless:

    (4) the debtor knowingly and fraudulently, in or in connection with the case –

        (A) made a false oath or account

37. Plaintiff Centric Bank believes and therefore avers that Debtor made a false oath or account when he failed to disclose the Florida Property, and when he failed to ensure or modify his schedules to reflect Debtor's true financial condition.

### A. The Florida Property

38. With regard to the Florida Property not being listed on the Debtor's bankruptcy schedules, the Debtor is listed as a co-borrower on the Mortgage for the Florida Property.

39. Moreover, upon information and belief, under Florida law the Debtor maintains an equitable interest in the Florida Property due to his status as Mrs. Donovan's husband.

40. Notwithstanding the above facts, the Florida Property is not listed as an asset in the Debtor's bankruptcy estate, nor is the Mortgage listed as a liability for the Debtor.

41. Moreover, the timing and circumstances of the Florida Property transaction appear to be dubious.

42. The Debtor testified that Mrs. Donovan had been saving all of her income to purchase the Florida Property, while she knowingly allowed Debtor to spend all of his savings on the couple's household expenses in Pennsylvania.

43. Accordingly, while Mrs. Donovan may have purchased the Florida Property with "her" money, she clearly benefitted from Debtor's dissipation of his assets so that Mrs. Donovan could to save enough money to purchase the Florida Property, and to deed the Florida Property in her name directly.

44. Moreover, as stated above, the Florida Property was purchased only days before Debtor's bankruptcy filing.

45. This timing of this transaction is suspect and could be an indica of fraud.

46. Further, the fact that Debtor and Mrs. Donovan continue to reside together in the Florida Property, and the fact that Debtor allegedly does not pay rent or any household expense (despite claiming to be separated and despite the fact that Mr. Donovan is now gainfully employed) also casts doubt on the truthfulness of the Debtor.

47. The Debtor's actions clearly appear to be a deliberate plan by the Debtor to dissipate all of his assets in order to reduce his bankruptcy estate in a concerted effort with Mrs. Donovan to defraud the creditors in this matter.

48. The Debtor's failure to list the Florida Property on his schedules is a false oath made to the Court under 11 U.S.C. 727(a)(4).

**B.     The Debtor's Income and Expenses**

49. The Debtor's schedules listing his alleged income and expenses are completely inaccurate based on the Debtor's testimony.

50. While Debtor testified that those schedules were accurate as of the filing date of the bankruptcy, they are clearly not accurate at this time.

51. For example, Debtor's schedules state that he has $0.00 income and $9,934.64 of expenses; however, Debtor testified that he now makes approximately $100,000.00 per year ($8,333.33 per month), and that his only expenses are for food

and gas.

52. Thus, Debtor's income and expense schedules are now completely false.

53. A Debtor generally has an ongoing duty to disclose financial information, and to update said information if the filings that were previously submitted are no longer accurate.

54. This requirement is especially true in a Chapter 7 bankruptcy, because the debtor's income level determines whether he qualifies for a Chapter 7 filing and subsequent discharge.

55. The "Means Test" that is used in Chapter 7 balances the debtor's monthly income against his monthly expenses in order to determine if there is a presumption of abuse.

56. The general formula is if the Debtor's adjusted current monthly income less expenses multiplied by 60 is less than $9,075, there is no presumption of abuse, but if it totals more than $15,150, there is a presumption of abuse.

57. In this matter, based on the limited information available, <u>there is a high likelihood that the total of this formula will greatly exceed $15,150, resulting in a presumption of abuse by this Debtor</u>.

58. Therefore, the Debtor's Chapter 7 bankruptcy has clears signs of being filed in bad faith.

59. Accordingly, as the Debtor's failure to properly update his schedules is a false oath made to the Court under 11 U.S.C. 727(a)(4), the Debtor's discharge should be denied.

C. **Mrs. Donovan's Income Should Be Included**

60. Mrs. Donovan should have been included on the Debtor's schedules, as a Debtor's "current monthly income does not include all the income of the non-debtor spouse, but rather only amounts expended on a regular basis for household expenses." *Rickabaugh v. Rickabaugh (In re Rickabaugh)*, No. 1:20-bk-3505-HWV, 2021 Bankr. LEXIS 2173, at *25 (Bankr. M.D. Pa. Aug. 10, 2021).

61. In this matter, there is testimony that Mrs. Donovan pays all of the current household expenses, and that she is currently employed full time.

62. Upon information and belief, Mrs. Donovan currently earns more than $100,000 per year in her current job.

63. Mrs. Donovan's income should be included on the Debtor's schedules, and the failure to do so is a further indica of fraud.

64. As the Debtor failed to properly include his wife's income in his schedules, Debtor made a false oath to the Court under 11 U.S.C. 727(a)(4), the Debtor's discharge should be denied.

D. **The Debtor Has A Duty To Make Full Disclosure**

65. All of the cited issues related to the validity of the Debtor's schedules are important because the Bankruptcy Rules require the Court to examine whether the Debtor has been forthcoming with the Bankruptcy Court and creditors. *Rickabaugh v. Rickabaugh (In re Rickabaugh)*, No. 1:20-bk-3505-HWV, 2021 Bankr. LEXIS 2173, at *25 (Bankr. M.D. Pa. Aug. 10, 2021).

66. "The integrity of the bankruptcy process rests upon a debtor's full and

honest disclosure of all required information." *Id.*.

67. "To the extent reasonably possible, a debtor seeking the protection of this Court must file bankruptcy schedules which are both thorough and accurate." *Id.*

68. This duty continues throughout the duration of the case. *Id.* (citing FED. R. BANKR. P. 1009).

69. It should be noted that "the existence of an inaccuracy in a debtor's schedules will not, standing alone, warrant any adverse action so long as the inaccuracy is inadvertent." *Id.*

70. However, it does not appear that the Debtor's failure to include all of the required information on his schedules (or to appropriately update the schedules) was the result of an inadvertent mistake.

71. The Debtor was aware of the purchase of the Florida Property prior to his bankruptcy filing, as he executed the Mortgage for the Florida Property.

72. Moreover, the Debtor clearly knows which household expenses he is paying and which expenses he is not making any payment.

73. Debtor's failure to properly include all relevant amounts being received, his equity interest in the Florida Property, and the salary being received from his new job is clearly not the result of mistake, but is due to Debtor's willful actions and misrepresentation.

74. As Plaintiff Centric Bank believes and therefore avers that the Debtor has made false statements/oath regarding his financial condition in this

bankruptcy, Plaintiff Centric Bank believes that the Debtor should be denied a discharge in this matter.

75. Accordingly, Plaintiff Centric Bank respectfully requests that the Debtor not be granted a discharge.

WHEREFORE, Plaintiff Centric Bank respectfully requests an Order denying Debtor a discharge, together with such other relief as the Court deems necessary and appropriate.

Dated: 5/11/22

BERGER LAW GROUP, PC

By: _____
PHILLIP D. BERGER, ESQUIRE
919 Conestoga Road, Building 3, Suite 114
Rosemont, PA 19010
(610) 668-0800
PA ID #58942